## Case No. 1,953.

BROOKS et al. v. JENKINS et al.

[3 McLean, 432;[1] 2 West. Law J. 11; 1 Fish. Pat. Rep. 41.]

Circuit Court, D. Ohio. July Term, 1844.

PATENTS—DEFECTIVE TRANSCRIPT—RENEWAL—APPLICATION AND ISSUE—EVIDENCE—DOCUMENTS—ADMINISTRATOR OF PATENTEE — CONSTRUCTION OF ACT—DISCLAIMER — DEPOSITION — PRACTICE ASSIGNMENT — SPECIFICATION — DESCRIPTION—PLANING MACHINES—EXPERT TESTIMONY—JURY—PATENTS NOVELTY—VALIDITY—COMBINATION—INFRINGEMENT.

1. A transcript from the patent office may be corrected by another transcript, duly certified. A defective transcript cannot affect one that is complete.

2. It is not essential to the validity of a renewed patent, that the proceedings of the board should be stated at length. It must appear that the subject of renewal was before the board, and that their decision was in favor of it.

3. The functions of the board are in their nature judicial.

[Cited in Crompton v. Belknapp Mills, Case No. 3,406.]

4. Copies from the records of the patent office of assignments, are evidence.

5. The administrator of a deceased patentee has a right to apply for and obtain a renewal of it, in his own name. The patent law gives an exclusive right, but this is not a monopoly in its odious sense. The act should be liberally construed to effectuate its objects.

6. In making a disclaimer of a part of an invention claimed, through the mistake of the person making it, he must state his interest in the patent.

7. By a rule of court, all formal objections to taking depositions must be indorsed on them before the trial.

[Cited in U. S. v. Tilden, Case No. 16,520.]

8. A patentee has a prima facie right to the thing patented.

[Cited in Wilson v. Rousseau, 4 How. (45 U. S.) 704.]

9. An administrator of a patentee may assign the patent which has been renewed in his own name.

10. The thing invented must be so described as to be distinguished and known.

11. If a machine be improved, the improvement must be so described as to distinguish the new from the old. Where this is not done, the patent is void.

12. Whether the thing invented be sufficiently described, is a question of law. If in describing the invention, technical terms be used, peculiar to mechanics, evidence may be given as to the import of such terms, and a jury must decide.

13. Woodworth's patent is void, if it rest upon a claim to the improvement of a machine. No improvement is stated so as to distinguish it from any other part of the machine. But the description may sustain the patent, for the combination of certain mechanical structures. Whether the description in Woodworth's schedule is sufficient to enable a skillful mechanic to construct the machine, is a question of fact for the jury.

14. The opinions of experts, or persons skilled in the structure of machines, is evidence. Such evidence will be weighed by the jury, but in coming to a decision they will exercise their

[1] [Reported by Hon. John McLean, Circuit Justice.]

own judgments. Where witnesses differ, as they usually do, on such subjects, the jury will not decide by their numbers, but the weight which the different witnesses are entitled to.

15. Where more is claimed by a patentee than he invented, he must, within a reasonable time, disclaim the part not properly claimed, or his patent will be void.

16. Whether a disclaimer has been made within a reasonable time, is a mixed question of law and fact. Such a question is properly referred to the jury, with all the circumstances of the case, under the instruction of the court.

17. Until the act of 1837 [5 Stat. 193] was passed, no negligence could be attributed to the patentee or his administrator, in this case.

18. The invention, to be valid, must be new. And this is equally the case, whether the invention claimed consist of an entire machine, or improvement of a machine, or a combination of several mechanical powers.

19. If the thing claimed to have been invented has been before made, or described in any public work, the discovery is not new, and the patent is, consequently, void.

20. A machine which is not the same in principle, does not infringe on the rights of the patentee.

21. To establish an infringement of a combined machine, all the parts which form the combination must be imitated. The patent is for the entire machine as combined, and not for its parts. The parts combined, being before known, are not withdrawn from the community.

22. Changing the position of a machine, does not alter its principle.

23. The principle of a machine depends upon its peculiar structure, by which a certain effect is produced. Machines may differ somewhat in their structure, and yet be substantially the same. If they are substantially alike in their structure, and produce a similar effect, they are in principle the same. The word "substantial," as here applied, is not susceptible of a specific definition. But the term is so used in courts of justice, and in the ordinary affairs of life.

[24. Cited in Goodyear v. Providence Rubber Co., Case No. 5,583, to the point that, where the imputation of fraud arises in a proceeding between the government and the patentee and a third person whose rights of property were directly involved in the question of extension, proof of fraud in obtaining the extension is sufficient to defeat the patent; but the proof, to avail the party making the imputation, must be clear and satisfactory.]

[This was an issue to a jury, out of chancery, tried before Mr. Justice McLean. The original suit in equity was for the infringement of letters patent for a machine for "planing, grooving, and cutting boards and dressing brick," granted to William Woodworth, of New York, on December 28, 1828. Woodworth died prior to February 14, 1838, and the patent was extended upon the application of, and in the name of, the administrator for seven years, from December 27, 1842.] [2]

[The original suit was brought by Moses Brooks and Joseph L. Morris against Benjamin Bicknell and Ebenezer Jenkins.]

[For cuts of this machine, and explanations, see Case No. 1,946.]

Wright & Coffin, for plaintiffs.

---

[2] [From 1 Fish. Pat. Rep. 41.]

Walker, Telford & Pugh, for defendants.

McLEAN, Circuit Justice [charging jury]. This is an issue directed out of chancery. The pleadings are filed and so made up as to try every material fact involving the validity of Woodworth's patent for planing boards, and also the renewal of that patent. On the trial an objection was made to a certified copy of the patent, because it contained specifications and a drawing of the machine, which were not attached to a certified copy of the same patent, that was used at a former term on a motion for an injunction in this case. The court held that as the copy offered in evidence was duly certified under the act of congress, it was evidence. That if there were any inaccuracies in the copy, they might be shown by other certified copies. That a former and defective transcript would not affect a full and corrected copy.

It was objected that the fourth page of the schedule which relates to the renewal, does not show a compliance with the provisions of the statute. The eighteenth section of the act of the 4th of July, 1836 [5 Stat. 124], requires—1. That a patentee who desires an extension of his patent, shall make application to the commissioner of the patent office, setting forth the grounds thereof, and shall pay into the treasury forty dollars. 2. The commissioner is required to give notice in one or more newspapers, of the time and place where the application will be considered. 3. The secretary of state, the solicitor of the treasury, and the commissioner of the patent office, who consitute a board for that purpose, shall sit at the time and place designated in the notice, and shall hear the evidence for and against the extension; and if the board shall be of the opinion, that an extension of the patent is necessary to remunerate the inventor, the commissioner is required to extend the patent, by making a certificate thereon; which certificate, with a certificate of the board as to their judgment and opinion, shall be entered on record in the patent office.

The transcript of the renewal shows that the board, without naming them, had the application for the renewal before them, and that they decided in favor of an extension of the patent; on which the commissioner renewed the same, and certified, in the words of the act, that the extension, with the certificate of the decision of the board, was recorded in the patent office. The transcript does not state the payment of the money, the notice, the meeting of the board, and the grounds of the decision, all of which it is contended must be stated to make the extension of the patent legal. That it is a special proceeding, which must be in strict accordance with the statute. The proceeding before the board was not, necessarily, ex parte. Those who contested the right of Woodworth had a right to appear and op-

pose the renewal of the patent. Whether there was such opposition does not appear from this transcript, but it does appear that the subject was before the board, that they were in favor of extending the patent, and that their decision, with the extension by the commissioner, was recorded. This is no doubt the general form used in such cases, adopted by the patent office. It is less technical than is required in a judicial record, but the proceeding is summary, and does not require the same degree of particularity. The function of the board is, in its nature, judicial. Parties are brought before them, as well those who oppose the extension of the patent, as those who apply for it; and evidence on both sides being heard, the board pronounce their judgment. The proceeding, therefore, is not like a tax sale, where every step must be proved, or the title fails. But it is in the nature of a judicial action where, jurisdiction being acquired, no subsequent errors can affect the title of a purchaser under execution. This court cannot prescribe the form in which duties, devolved upon the executive branch of the government, shall be performed. We can only say whether enough appears to show that the subject was before the board, and their decision. And this, it appears to me, is sufficiently shown from the transcript.

The plaintiffs afterwards gave in evidence another transcript from the office, showing the notice by the commissioner, the meeting of the board in pursuance thereof, their adjournment, and their decision in favor of the extension of the patent, after hearing evidence for and against it. Certified copies of assignments were offered in evidence and objected to, unless the originals were produced. The court held that as all assignments of the patent, or any part of it, were required by the act to be recorded in the patent office, and as copies of the record are made evidence, the objection must be overruled. That the plaintiffs could not be presumed to have possession of any of the original assignments, except the one under which they immediately claimed. That assignment was offered in evidence and received without objection.

The question was raised as to the right of the administrator to apply for an extension of the patent in his own name. This point was considered on the motion made for an injunction and decided in favor of the administrator, in whose name the patent was extended. That decision was not made without hesitancy, and the doubt expressed by Judge Story of its correctness, in the very recent case of Woodward v. Gould [Case No. 18,004], which brought up the same question on the same patent, has somewhat shaken my confidence in the view formerly taken. As the point will be taken before the supreme court, I deem it unnecessary now to discuss it at large. My opinion, though shaken, is not changed. On a full discussion in the supreme court, I may find reasons to lead me to a different result. But it still seems to me, that the renewal of the patent in the name of the administrator, is so clearly within the spirit and policy of the act of 1836, it should be sustained.[3] There is nothing that the act requires the patentee to do which may not be done by his administrator, except the oath of the ascertained value of the invention, and of the receipts and expenditures, &c. But these receipts and expenditures may be ascertained by the books of the patentee, or from other evidence. The avowed object of the law, in granting an extension of the patent, is to give an adequate remuneration to the patentee, for "his time, ingenuity and expense; he having satisfactorily shown to the board, that he had not received such a remuneration." Now, why should this remuneration be withheld from the heirs of a deceased patentee? If a patentee die after his invention, and before he obtains a patent, his administrator may apply for and obtain it. The same reason and justice require a renewal in behalf of the heirs, where the remuneration has been inadequate. It is true the act does not expressly so provide.

The patent law, it is argued, gives a monopoly, and, therefore, it should be strictly construed. This law gives a monopoly, but not in an odious sense. It takes nothing from the community at large, but secures to them the greatest benefits. Distinguished as many names have become in different ages of the world, the names of Fulton and the inventor of the cotton gin, with all intelligent men, will be placed in the first rank of human benefactors. To remunerate inventors for "their time, ingenuity and expense," the law gives to them the exclusive right of selling their invention for a limited period. When we consider the inestimable advantages which result to the world from the "labor, ingenuity and expense" of inventors, so far from classing them with monopolizers, they should be regarded as public benefactors. And in order to secure to them the remuneration which the law provides, a liberal construction should be given to it. Of this opinion was the late Attorney General Grundy, who was consulted by the board under the act, as to the right of the administrator to renew the patent, before they acted on the subject. His opinion, which is found in executive document, No. 123, twenty-sixth congress, is in favor of the administrator in behalf of the heirs, to extend the patent. And it seems the board acted on this opinion, which coincided with their own judgment. In the case of Van Hook v. Scudder [Case No. 16,853], in 1843, Judge Thompson, it being one of the

---

[3] [The patent act of 1836 authorized the extension of a patent to the executor or administrator of a deceased patentee. Wilson v. Rousseau, 4 How. (45 U. S.) 646. See, also, Providence Rubber Co. v. Goodyear, 9 Wall. (76 U. S.) 788.]

last causes heard by him, and which is reported in pamphlet form, observes on this very question, "But it is further objected, that the patentee died before the patent expired, and that he never made any application for its extension; that the extension was granted upon the application of the administrator of the patentee, and that the law does not authorise an extension upon such an application. I am of the opinion that an administrator or executor may make the application for the extension of a patent where the grantee is dead, and that the patent may lawfully be extended on such an application." In Grant v. Raymond, 6 Pet. [31 U. S.] 241, in speaking of the power of the secretary of state to receive the surrender of a patent, which was void for a defective specification, and issue a corrected one, the late chief justice says, "It is true that the act of congress contains no words which expressly authorize the secretary to issue a corrected patent," &c. "The force of this objection, and the argument founded on it, he says, is felt. If the new patent can be sustained, it must be on the general spirit and object of the law, not on its letter." And on this view of the statute, the supreme court sustained the corrected patent, and held that it had relation back to the emanation of the original patent. Now this would seem to be a more liberal construction of the statute to effectuate its object, than is required to sustain the right of the administrator. Upon the whole, the former ruling of the court on this point will be adhered to, in order that the question may be made before the supreme court.

It is objected that the disclaimer of the invention of circular saws entered by the administrator is insufficient, as it does not state the interest he had in the patent. The seventh section of the act of 3d March, 1837 [5 Stat. 193], provides, that where the specification is broader than the invention the patentee, his administrators, executors and assigns, may disclaim such parts as are not claimed under the patent—stating therein the extent of his interest in such patent. The administrator in whose name the patent was extended does expressly state, that he is the patentee, and refers to the patent as showing his interest. This is sufficient under the law; and the objection is, therefore, overruled.

Certain depositions offered in evidence were objected to, as two notices of taking them were given, and it does not appear under which the depositions were taken. But the court overruled the objection, it being an objection as to the mode of taking the depositions, which before the commencement of the trial, had not been indorsed on the depositions as required by rule of court.

The deposition of Strong being offered in evidence, was objected to on the ground of interest, he having an interest with the patentee in the original patent. It appears that Strong executed and delivered a quit claim of his interest to the administrator, some time before the administrator sold and transferred the interest now claimed by the plaintiffs. Strong, therefore, cannot be affected by the verdict in this case, and that is the true test of his competency. It is not perceived how he can have any interest in the renewed patent. The objection is overruled.

The evidence being closed, the cause was argued on both sides at great length and with much ability. The court charged the jury as follows: The importance of this case, gentlemen of the jury, is shown by the time which has been taken up in its investigation, and the great interest evinced by the parties concerned. It seems that suits have been brought under Woodworth's patents, in different parts of the Union, for infractions of his rights. This shows satisfactorily that the invention contended for must be of great value. The patent, and the assignments under it, give to the plaintiffs a prima facie right, which must prevail, unless the defendants shall show it to be invalid, or that it cannot operate against them. The defence, as made before you, mainly rests upon five grounds. 1. That the assignment by the administrator, under which the plaintiffs claim, is invalid. 2. That the specifications are so defective as to render the patent void. 3. That the patent is void, because the patentee claimed more than he had invented. 4. That the specifications are taken mainly from Bentham's machine. 5. That the machine of the defendants, in principle, is different from that of the plaintiffs. If any one of these grounds shall be sustained, it must defeat the action of the plaintiffs.

And first, as to the assignment by the administrator. If the administrator had a right to renew the patent in his own name, it would seem to follow that he must have the power to sell and transfer it. An administrator under the laws of New York, cannot exercise his functions beyond the jurisdiction in which his authority was conferred. He cannot bring suit in another state, except under the sanctions of the laws of such state. But the right in question was not acquired and could not be assigned under the laws of New York. The act of congress directs the mode in which the assignment shall be made, and where it shall be recorded. The administrator was recognised as the legal representative of the deceased, and the renewal of the patent was granted in his name. This right is personal property, and, as a matter of course, would go to the administrator. The act of the government makes the administrator the trustee for the heirs of the deceased patentee, by the extension of a patent in his name, and he is responsible to the heirs for a faithful execution of his trust. Had the patent been renewed in the name of any other person, in trust for the heirs of Woodworth, he would have incurred the same re-

sponsibility. The right in the hands of the administrator was a unit, extending throughout the United States, which, it seems to me, he had the power to sell and transfer in the state of New York, the same as any other personal property of the estate; and no reason is perceived why the right may not be conveyed in parts, so as to suit purchasers. It is supposed, that to sustain the right of the assignees, they must show that this interest was appraised, advertised and sold the same as the other personal property of the deceased was required, by the laws of New York, to be appraised and sold. This formality need not be shown by the purchaser of personal property. He, taking possession of the property under a purchase from the administrator, can hold it, unless the transaction be fraudulent. Upon the whole, as no fraud is alleged or proved, the assignment of the right in question must be considered as valid.

I come now to the second ground, which is, that the specifications are defective. If this be so, the patent is void. By the act of 1793 [1 Stat. 321] the applicant for a patent is required "to describe the thing invented in such full, clear and exact terms, as to distinguish the same from all other things before known, and so as to enable any person skilled in the art or science of which it is a branch, to make the same." In requiring this specification, the law has two objects. First, as the grant gives an exclusive right, that the nature and extent of it may be understood; and secondly, that when the exclusive right ceases, from the description, the machine may be constructed.

A question is raised, whether the thing claimed to have been invented is sufficiently described in the patent, is a matter for the determination of the court or jury. In its nature it is a question of law, for it depends upon the construction of a written instrument. If technical terms be used peculiar to mechanics in describing the invention, evidence may be heard in explanation of those terms, and in such a case a jury may be necessary. If this point were ordinarily referable to a jury, the decisions on the same instrument would be as variable as the names of the parties. To produce uniformity of decision, the courts must give a construction to all written instruments. In this mode, by the application of known rules of construction, the specifications of a patent are construed and settled as regards the thing invented. Whether the description is so particular as to enable a mechanic to construct the machine, is a question for the jury. But unless the thing claimed to be invented, is so described as to be known, in the language of the statute, from every other thing, the patent is void. And this must be determined by the court.

What does Woodworth in his specifications claim to have invented? Does his invention consist of the improvement of a machine, or in the combination of known mechanical structures? If the former be claimed, then I have no hesitancy in saying the specifications are defective, and that the patent is void. In his schedule, Woodworth says, "The plank, boards or other material, being reduced to a width by circular saws or friction wheels, as the case may be, the application of which to this purpose he claims to have invented." Now this is all he says of circular saws. How they are to be applied he does not say. Such a description, it would seem to me, is so defective as to be regarded as surplusage. It is true circular saws have been disclaimed, and of course do not now constitute any part of the invention claimed. But independently of the disclaimer, they are not only so vaguely described and so disconnected with every other part of the patent, that I do not well see how they could have vitiated it. If he had said that the boards being reduced to a width by a handsaw, would any one have supposed that he claimed the invention of a handsaw? And I cannot distinguish between the two cases. But Woodworth proceeds, the board "is then placed on a carriage resting on a platform with a rotary cutting wheel in the centre, either horizontal or vertical. The heads of circular plates fixed to an axis, may have one of the heads moveable, to accommodate any length of knife required. The knife fitted to the heads with screws or bolts, or the knives or cutters for moulding fitted by screws or bolts to cogs, connecting the heads of the cylinder, and forming with the edges of the knives or cutter, a cylinder. The knives may be placed in a line with the axis of the cylinder, or diagonally. The plane or other material resting on the carriage may be set so as to reduce it to any thickness required; and the carriage moving by a rack and pinion, or rollers, or any lateral motion, to the edge of the knives or cutters on the periphery of the cylinder or wheel, reduces it to any given thickness." He does not claim the invention of cutter wheels, "knowing they have been long in use."

Now, if he claims an improvement of a machine, in what does that improvement consist? It is not the cutter wheels nor the planing irons fastened upon it. These were known long before. The carriage, rack and pinion were also known. What is claimed as new, and how is it distinguished from the old? There is nothing on the face of the patent or specifications, which can enable any one to say, what is new and what is old. If he has added something to a machine which is new, and which he claims as his improvement, he must describe it. But no such description is given. "The application of the machine to the planing, tongueing and grooving of boards, does not show what part of the machine is new." He can then have no shadow of ground on which to sustain his patent, for an improvement of a ma-

chine. In such a claim it may not be necessary to describe the machine before it was improved; this is sometimes done, and it shows with greater distinctness the improvement. But it is essential that the part improved should be so distinctly stated, as to be distinguished from every other part of the machine. What has been said of the planing cutters, applies equally to the grooving and tongueing cutters. There is no statement of the part invented. To groove and tongue boards is an old operation. The cutters are not new. What [part]⁴ then is invented? From the specifications, no one can answer this question. It is not enough to give such a description of the machine patented as to show, by comparing it with other machines, what part has been invented. In Evans v. Eaton [7 Wheat. (20 U. S.)] 356, the supreme court say, "A description of the machine which mixes up the new and old, but does not describe what the invention is, cannot be sustained." Where an improvement on a machine referred to the previous patent of the machine, as showing the part invented, it was held sufficient. Harmar v. Playne, 11 East. 101. It is not enough that the thing designed to be embraced by the patent should be made apparent on the trial, by a comparison of the new with the old machine. Dixon v. Mayor, Con. Dig. Ind. 553. The specifications must be complete. No defects can be obviated by extraneous evidence at the trial. In this view it seems clear, and from the authorities cited, that Woodworth's patent for an improvement on the machine, is wholly unsustainable.

If the validity of the patent can be maintained, in this respect, it must be upon the ground that the invention consists in a combination of known mechanical powers, by which certain results are produced. In this combination consists the novelty. And I am inclined to think, that the specifications show with reasonable certainty, the combination of which the invention consists. Plane bits are combined with the rotary wheel, by which, connected with the structure described, the planing operation is performed. "He claims as his invention the improvement and application of cutter or planing wheels to planing boards, &c., and also his improved method of cutters for grooving and tongueing," &c. And he describes how the above operations may be so combined as to plane, tongue and groove at the same time. His "improved method of cutters for grooving and tongueing," means the arrangement of such cutters as described in the body of the specifications. And the application of the planing cutters to planing boards, combined with the action of the other cutters, constitute the invention claimed.

Having considered the question of law as

⁴ [From 2 West. Law J. 11.]

to the description of the thing invented, it will be for you, gentlemen, to decide whether the combination, of which the novelty consists, is so described as to enable a skilful mechanic to construct the machine. You have heard much evidence from machinists on this point. Charles M. Keller, a witness, states, that he is a mechanical engineer, and has been connected with the patent office since 1822. Up to 1829 he assisted his father, who had charge of the models. He then succeeded his father. In 1836, under the new organization of the office, he was appointed examiner of patents, which office he still holds. His duties require him to examine all applications for patents, to see whether they are conformable to law. He is a practical mechanic, well acquainted with machinery. The specifications of Woodworth's patent he has frequently examined, in connection with the drawing, and, in his opinion, a skilful mechanic, from the drawing and description could, without any invention, construct Woodworth's machine. The velocity of the moving parts of the machine, and their proportions, he thinks, need not be stated, as these should be left to the adjustment of the constructor. William P. N. Fitzgerald, is an assistant examiner of patents with Mr. Keller, and he coincides with the above statement. Dr. Locke has closely attended to the science of mechanics for forty years, and is a practical mechanic, having in his philosophical experiments, been in the practice of constructing machines; he agrees in opinion, substantially, with Mr. Keller. Messrs. Kellum, Wells, and sixteen other witnesses, all of whom are machinists, some of them having long been engaged in the construction of machines, and they agree in saying that a skilful mechanic could, from Woodworth's specifications, make a planing machine, in principle the same as Woodworth's.

On the part of the defendants, several witnesses have been sworn. Dr. Jones has long been editor of a periodical work chiefly devoted to mechanics. He was for several years superintendent of the patent office; and since then has been much engaged in the theory of mechanics. At the time Woodworth applied for his patent, he was at the head of the patent office. He then thought the specifications were defective, and so stated to Woodworth's agent. A skilful mechanic, in his opinion, could not, without the aid of inventive talent, from Woodworth's specifications, construct the planing machine claimed by him. Messrs. Phillips, Straub, and five other witnesses, all of whom are experienced machinists, agree with Dr. Jones, as to the defectiveness of Woodworth's specifications. Some of them, and particularly Mr. Phillips, give as a reason for their opinion, that the proportions of the different parts of the machine are not stated, nor the velocity of its movements. Great respect is due to the opinions of professional men, on

matters which relate to their professions. On such subjects, and on such subjects only, are the opinions of witnesses received as evidence. This rule applies as strongly to mechanics as to any other profession or business. From the facts stated by the witnesses in this case, you perceive that the science of mechanics is no contracted profession. It affords a range for the highest mental vigor, and requires as deep thought, as nice a discrimination, as any other pursuit. The lights of chemistry, and of the highest branches of the mathematics, are subservient to it. No one can be an accomplished mechanist, who has not studied with some success the laws of physics.

A model of Woodworth's machine, as claimed by the plaintiffs, is exhibited to you, and its parts have been explained. On this, as on every other question submitted to the jury, they will exercise their own judgments. You will weigh the opinion of the witnesses, but your decision should not turn upon their number. You are made acquainted with the circumstances under which the witnesses testified, and the opportunities they had of knowing the facts sworn to by them. These will be taken into view in considering their statements. In effect the defendants hold the affirmative on this point. The right of action by the plaintiffs can be defeated only, on this head, by showing that the specifications are so defective as not to enable a skilful mechanic to construct the machine claimed. The utmost precision in the description of the machine is not to be expected, nor is it essential. Parts of machinery and processes generally known, need not be described. A wedge, pulleys, rollers, rack and pinion, and other things, known to all mechanics, will be supplied by the mechanist, without stating their size or structure. Nor is it essential to state the proportionate parts of a machine, nor the velocity of its operations. These are matters of adjustment for the eye and judgment of the constructor. Whether a machine be large in its parts or small, its motion slow or quick, makes no difference in the principle of it. If a planing machine operate on a soft substance, its motion must necessarily be slower than a hard one. By a detailed description of things generally known, and not essential to the improvement or combination invented, the statement is rendered more prolix and less perspicuous.

The third ground of defence assumes, that the patentee claims more than he invented. This involves the validity of the disclaimer made on the 2d January, 1843. The original patent expired the 27th December preceding; it was renewed on the application of the administrator the 10th November, 1842. It is earnestly contended that the right of entering a disclaimer was lost by an unreasonable delay. The original patent was dated in 1828, and the disclaimer was not entered until after it expired. This, it is insisted, shows gross negligence, both on the part of the original patentee and his administrator.

On the other side it is contended, that though the disclaimer may not have been made in a reasonable time, it does not, under the act of 3d March, 1837, defeat the right of action, but only the recovery of costs by the plaintiffs. The seventh section of the act authorises a patentee, where "through inadvertence, accident or mistake," he has claimed in his specifications more than he has invented, to disclaim such part. And the disclaimer is considered and taken as a part of the original specification, provided it shall not affect any action then pending, "except so far as may relate to the question of unreasonable neglect or delay in filing the same." The ninth section provides, that when through "mistake, inadvertence or accident, more is claimed than invented, the patent shall be deemed valid for so much of the invention as shall be truly and bona fide the patentee's. And such patentee, his assignees, &c., shall be entitled to maintain a suit for an infringement; but he shall not recover costs against the defendant, unless he shall have entered at the patent office, prior to the suit, a disclaimer. "Provided, however, that no person bringing any such suit shall be entitled to the benefits of the provisions contained in this section, who shall have unreasonably neglected or delayed to enter at the patent office a disclaimer as aforesaid." This section gives to the patentee a right of action for an infringement, though he has claimed more than he invented; and if a disclaimer of the part improperly claimed be made before the suit was commenced, with his damages costs may be recovered. If such disclaimer be not made, the judgment must be for damages without costs. But the proviso declares, "that no person bringing suit, shall be entitled to the benefits of the provisions of the section, who shall have unreasonably neglected or delayed to enter the disclaimer." Now is it not clear, that an unreasonable neglect or delay to enter the disclaimer, cuts off the patentee from all the benefits of the section, not only that he shall not recover costs, but that he shall have no right of action. This is, undoubtedly, the true construction of the section.

The question is raised, whether the unreasonableness of the delay to enter the disclaimer, is a question of law or fact. I think it is a mixed question of law and fact, and must be decided by the jury under the instructions of the court. In deciding this point, gentlemen, you will take all the circumstances of the case which bear upon it, into consideration. Until the act of 1837 was passed, which authorised the disclaimer, neither the patentee nor his representative was in default. On the 14th of February, 1838, letters of administration were taken out on the estate of the patentee. How long before that time he died does not appear.

From the time the administrator obtained an extension of the patent until the disclaimer was entered, five years and some months elapsed. It is proved that in 1835, on trial before the circuit court of the United States, Woodworth's patent was declared to be void, on the ground that he claimed more than he had invented. Woodworth must have died in less than a year after the act of 1837 took effect. The administrator who represented the personal rights of the deceased, cannot be presumed to have been as well acquainted with the defect in the specification and the mode of remedying it, as the patentee. The jury will, therefore, consider the change in the legal ownership of the patent, and the causes which produced it; and they will require less vigilance from the administrator than from the original patentee. The disclaimer was made in six days after the expiration of the original patent. No injury or hardship seems to have been suffered by any one, from the delay in making the disclaimer; certainly none could have been experienced by the defendants. The question then of negligence must be considered as between the government and the patentee. And it now rests for you to say whether, under the circumstances stated, the right of the patentee is forfeited by the delay of entering the disclaimer.

The fourth ground of defence is, that Woodworth's specifications were taken from Bentham's patent. Gen. Bentham's patent was obtained in England in 1793, and a description of it is found in the "Repertory of Arts;" published in London. The sixth section of the act of 1793, provides, "if it appear that the thing secured by patent was not originally discovered by the patentee, but had been in use, or had been described in some public work anterior to the supposed discovery, the patent shall be void." On this part of the defence the defendants hold the affirmative.

It is alleged that Bentham's machine is the same as Woodworth's. If it be in principle the same, then is Woodworth's patent void. The word principle is not used here in its general signification, but as applied to the structure of a machine. It means the operative cause by which a certain effect is produced. I observe the board before you is made smooth upon its surface, on one edge of it a groove is formed and on the other a tongue. This has been done by the machine before you in one operation. That machine is formed, as you perceive, by a combination of certain mechanical powers. This combination of powers is what is called the principle of the machine. Now it does not follow that the same effect may not be produced by a machine different in principle from the plaintiffs'. But where a similar effect is produced by a combination of the same mechanical powers, though the machines may be somewhat different in their structure, in principle they are the same.

On this part of the defence you have heard the statements of many experts, or persons skilled in the structure and operations of machinery. Dr. Jones says, that rotary cutters operating in the same manner as Woodworth's, were in use many years before the date of the patent. He refers to Bentham's machine as published in the tenth volume of the "Repertory of Arts and Manufactures." I find there, he says, as clear a description of the principal operating parts of the machine now in use, and known as Woodworth's planing machine, as are found in his own specifications. He says, in the cutters used by Woodworth there was not any thing substantially new. The cutters had not been so combined and arranged as to plane, tongue and groove plank simultaneously; but this combination or arrangement, he thinks, is not described by Woodworth. R. C. Philips, Isaac Straub, and two other machinists, agree with Dr. Jones. Charles M. Keller, on the part of the plaintiffs, says that he has examined Bentham's specifications, as published in the "Repertory," and is of the opinion, that they do not describe a rotary plane similar to Woodworth's. He says Bentham describes a series of instruments for shaping wood and other materials, and now known under the appellation of burr cutters, and may be considered as circular saws of great thickness and of various forms; but not having the cutters so shaped and connected with the shaft or stock as to be capable of performing the operation of planing, but on the contrary, that of rasping or scraping. Dr. Locke and four other witnesses agree with Mr. Keller that Woodworth's machine, as described by him, is essentially different from Bentham's.

In your retirement you will have the tenth volume of the Repertory, and a printed extract from it, containing, as is alleged, that part of Bentham's specifications which are similar to Woodworth's. By looking into this extract you will find that Bentham describes circular cutters, which may be considered, he says, "as so many plane irons." The cutter, he says, "should be made of one piece consisting of steel, or iron with steel welded on it, as far as it is necessary for strength and sharpness." He speaks also of a planing roller, and of cutters for tonguing and grooving. It would seem, therefore, that Bentham describes sharp cutters for performing operations, somewhat similar to those performed by the cutters described by Woodworth. But, I do not perceive in any part of Bentham's specifications, that he has combined the planing, tongueing and grooving, at the same time. And if this be not done, as the plaintiffs' patent claims, a combination of the cutters, so as to plane, tongue and groove at the same operation, the machines cannot be identical in form or principle. If Bentham had described the different parts of Woodworth's machine with the utmost accuracy, and shown the operation

of each, yet if no combined action be described, Woodworth's patent is not affected by it. You will respect and weigh the opinions you have heard, under the same rule as stated to you on the second ground of defence. As finding against the plaintiffs on this ground is fatal to Woodworth's patent, you must be clearly convinced that the machines are the same in principle, before you find for the defendants. Doubts on this head will incline you in favor of the patent.

There remains but one more ground of defence, and that is, that the machine of the defendants is different in principle from that of the plaintiffs. If this be so, there is no infringement of the plaintiffs' right; and your verdict will be for the defendants. The proof here devolves on the plaintiffs. They allege that the defendants have infringed their rights, and to obtain your verdict they must show it. Doubts under this head will incline you favorably to the defendants; as they are not to be deprived of a right which is common to every citizen, unless it shall clearly appear that their machine is substantially like the one claimed by Woodworth. To protect the defendants there must be a difference in principle. What the principle of a machine is, has already been explained to you. You have been informed that the invention of Woodworth consists in the combination of certain known mechanical structures, by which boards are planed, tongued and grooved, in the same operation. If the defendants have used in their machine any parts essential to this combination, less than the whole, there is no infringement. For the invention of Woodworth is not of the different parts which compose the entire machine, but their combination. By taking instruments known and used, to form this combination, he did not affect the common right to use those instruments. The use of them in their combined form, if new, is an infringement. Parts of the machinery described or referred to, not essential to the combination, may be so considered by the jury. Woodworth speaks of a carriage, on which the plank is placed, to be moved towards the planing cutters, "by rack and pinion, rollers, or any lateral motion." The words "lateral motion," in mechanics, do not mean, as the term ordinarily signifies, a side motion, but a longitudinal one. Every person who has seen a mill knows what is meant by the "carriage," and how it is moved by "a rack and pinion." In the contemplation of Woodworth, the carriage might be moved by rollers, or by any lateral motion. Now it must be admitted, that the "rollers," or "any lateral motion," are used in connection with the carriage. And the question here is, whether the carriage spoken of, is an essential part of the combination. It does not seem to be so treated by the patentee. We at once see, that the cutters, as arranged, to plane, tongue and groove, are essential. For by dispensing with either of

these cutters, or by changing their position, the combined operation could not be performed. It is not so with the carriage; any other machinery which shall move the board against the cutters, will answer the same purpose. This is shown by the defendants' machine, in which the plank is moved by pressure rollers. There are rollers in Woodworth's drawing, which some of the witnesses say would perform the office of feeding rollers. They were considered as guiding rollers. By whatsoever means the plank may be moved against the cutters is immaterial; but the necessity of such a movement is obvious to every one. The mode by which this is done, would seem to me not to change the principle of the machine. The machine itself may be moved by horse power, by water or by steam, and in the application of these powers the machinery must be adapted to each, but this change in the machinery would make no change in the combination invented. This, however, is a matter of fact for your consideration and decision. The specifications of Woodworth represent the combined action of the machine in a vertical position, but the effect and the principle of it would be the same if the action were horizontal. This watch which I hold by the chain, operates vertically; I lay it upon the table, and the same operation continues horizontally. Time is marked with equal accuracy in both positions. You see then, by a change of position in the combined machine, its mechanical action is not affected.

Whether the machines of the parties before you are the same in principle, must depend upon their structure. The model of each is before you, and you have heard the opinions of skilful mechanists on the subject. Samuel Keller, called by the plaintiffs, states, that he has examined the specifications and drawing of the defendants' machine. The plane irons are attached to a wheel or arms on a shaft, and so inclined that the cutting edges of the planes, in their rotation, generate a cone.[5] And he says this machine in principle and mode of operation, is similar to Woodworth's. 1. In the method of planing. 2. In the method of holding down the board to the bed on which it rests. 3. In the employment of the tongueing and grooving instruments in combination with the planing wheel. Dr. Locke says, there is some difference in the structure of the two machines, but that there is no difference in principle. That the same mechanical powers are employed in both machines, and the result is substantially the same. Nine other witnesses, all of whom are machinists, agree with Dr. Locke. R. C. Phillips, a witness called by the defendants, states, that he has carefully examined both machines, and that there is a difference in the principles of the two machines, as well as in their structure. He considers this difference mainly to consist in the

---

[5] [2 West. Law J. 11, gives "curve."]

action of the planing wheels. The action of Woodworth's cutters is horizontal, and they strike the face of the board at right angles. That the defendants' cutters, from the inclination of the shaft on which they are placed, strike the board diagonally, cut a larger space on it, performing, to use his own words, a shaving operation. That this wheel works faster than Woodworth's, and requires less power. In this he thinks it has been much improved, and is better than the plaintiffs'. Four other witnesses agree, substantially, with Mr. Phillips. This closes the evidence on both sides. And now, gentlemen, the duty devolves upon you to decide this important controversy.

If you find the defendants' machine is the same in principle as the plaintiffs', with some addition, it will be your duty to find for the plaintiffs. But if there is a substantial difference between the two machines—a difference in principle, you will find for the defendants. An objection is made to the use of the term "substantial," as having no definite signification. It is true, the word as applied in this case is not susceptible of an exact definition. But it is generally used in the same sense. No word is more familiar in the action of a court of justice. And in a larger sense it applies to all human affairs. In the exact sciences we look for precision. But beyond the mathematics, in human transactions, we may be said to reach the truth more by approximation than by absolute demonstration. A pleading in a civil or criminal case may be substantially good, though it may not be technically formal. An instrument substantially described in a declaration or indictment, may be given in evidence. We look more to the substance of things than their forms. In asking you, then, to determine whether the machines are substantially alike or substantially different, you are called to perform only a common duty; not as regards the questions before you so much, as in the discharge of your ordinary duties in life. Should you find for the plaintiffs no more than nominal damages are claimed.

NOTE [from original report]. Since the above charge was delivered, a newspaper report of a decision of Mr. Justice Story in Woodworth v. Sherman [Case No. 18,019], which was a motion for an injunction, founded on the renewed patent of Woodworth, in which he remarks, "as to the second point, that on the fullest reflection he had come to the opinion, that Mr. Justice M'Lean was right in his decision, that an administrator was competent to apply for and receive this grant. That to hold otherwise would be going contrary to the whole spirit and policy of the patent laws."

[NOTE. There was a verdict for defendant, and thereafter a motion was made to set aside the verdict and for a new trial of the issue, which was denied. See Brooks v. Bicknell, Case No. 1,946; also, see opinion, given in the progress of the suit, as to whether the assigned patent issued to the benefit of the assignee on renewal. Id. 1,945. For other cases involving this patent, see note to Gibson v. Van Dresar, Id. 5,402, and to Bicknell v. Todd, Id. 1,-389.]