### AMERICAN CABLE RY. CO. v. MAYOR, ETC., OF CITY OF NEW YORK et al.

(Circuit Court, S. D. New York. June 7, 1893.)

1. PATENTS FOR INVENTIONS—INVENTION—COMBINATION—CABLE RAILWAYS.
   Claim 6 of letters patent No. 271,727, issued February 6, 1883, to Daniel J. Miller, and covering a device for raising a horizontal section of the cable in a cable railway, so that the same may be seized by the gripper, the result being attained by mounting two of the carrying pulleys on hinged frames, and connecting them by a rod or chain, so that both may be raised simultaneously, shows a new combination of old elements producing a new and useful result, and is therefore valid.

2. SAME—INFRINGEMENT.
   There is nothing to limit the patent to use in a tunnel, and infringement is not avoided by the fact that the invention is applied above the plane of the rails on a surface or elevated road, or by the fact that defendants, while raising two pulleys by substantially the device of the patent, also raise other pulleys at the same time, thus elevating a longer section of the cable.

3. SAME—ASSIGNMENTS—PROOF OF—CERTIFIED COPIES.
   A certified copy of the assignment of a patent is sufficient, prima facie, to show title in the assignee.

In Equity. Bill by the American Cable Railway Company against the mayor, aldermen, and commonalty of the city of New

York and the city of Brooklyn for infringement of a patent. On final hearing. Decree for complainant.

Charles H. Williams, Edward W. Cady, and Daniel H. Driscoll, for complainant.

Francis Forbes and William N. Dykman, for defendants.

COXE, District Judge. This is an action of infringement of letters patent, No. 271,727, granted to Daniel J. Miller, February 6, 1883, for improvements in the construction of cable railways. The patent is now owned by the complainant. The portion of the invention involved in the present suit relates to a combined cable support and cable lifter so arranged that horizontal sections of the cable can be raised sufficiently to be received into the gripper at any desired point. The pulleys which carry the cable are also used as lifters, two of them being mounted on hinged frames and connected by a rod or chain at points along the road where it is necessary to pick up the cable. When the frame of one pulley is raised by any suitable lifting device the other rises simultaneously, thus elevating the section of the cable between the two pulleys so that it can be conveniently grasped by the gripper. The sixth is the only claim involved. It is as follows:

"(6) The two carrying pulleys D D, mounted and hinged, when connected by a chain or rod, as shown, to insure their being simultaneously raised, for the purpose specified."

The defenses are lack of novelty and invention, noninfringement and defective title.

The proposition that Miller was the first to raise a horizontal section of a moving railway cable up to the plane of the gripping apparatus was clearly established at the argument. Did it require invention to do this?

The useful feature of the device is that it holds the cable in a level position so that the gripper can seize it at any point between the pulleys, thus preventing wear and tear and avoiding many other disadvantages fully described by complainant's expert witness. In prior structures, the cable, being raised by a single pulley, fell away in angular sections from either side of the pulley and could be engaged by the gripper at one point only. The benefits derived from the patented apparatus are obvious, especially where, as in defendants' railway, the grip is so large—the gripping pulleys being three or four feet apart—that it can only operate on the cable when in a horizontal position.

It is said that what Miller did was a simple change within the sphere of the skilled mechanic. Simple it undoubtedly was, but the idea never occurred to any of the myriad of mechanics and inventors who, for many years, have made the improvement of cable railways their distinctive work. The idea underlying most of the great inventions is a simple one. Such an idea came to the Cornish boy who was employed to manipulate the valves of the old Newcomen steam engine. One day, anxious to join his comrades at their sports, it occurred to him that the walking beam vibrat-

ing above his head could be made to do his work. Once conceived it was the easiest of tasks to carry out the idea. An ordinary mechanic could have done it; and yet the embodiment of that idea gave to the world the first automatic steam engine. So, too, the central ideas underlying the safety lamp, the sewing machine and even the telephone are exceedingly simple. A school boy can understand them now, but their authors were peerless inventors nevertheless, and an argument to prove the contrary would hardly be listened to with patience. Miller stands upon a distinctly higher plane than many inventors whose patents have recently been sustained by the supreme court. In Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. Rep. 825, patents were upheld for improvements in connected carriage springs, by means of which the springs move in unison so that the weight imposed upon them is equalized and side motion to the body of the vehicle is prevented. The prior art approximated much nearer to the patented structures than in the case at bar. In Krementz v. S. Cottle Co., 13 Sup. Ct. Rep. 719, the court held that it involved invention to construct a hollow collar button out of a single continuous plate of sheet metal, and in the Barbed Wire Case, 143 U. S. 275, 12 Sup. Ct. Rep. 443, that it involved invention to produce a coiled barb in combination with a twisted wire by which it was clamped and held in position, although plain and twisted wire provided with sharp thorns or barbs were known before. See, also, Gandy v. Belting Co., 143 U. S. 587, 12 Sup. Ct. Rep. 598; Magowan v. Belting Co., 141 U. S. 332, 12 Sup. Ct. Rep. 71; Electric Co. v. La Rue. 139 U. S. 601, 11 Sup. Ct. Rep. 670. It is thought, therefore, that Miller is clearly within the rule laid down in Loom Co. v. Higgins, 105 U. S. 580. He has made a new combination and arrangement of known elements, and produced a new and beneficial result never attained before.

Do the defendants infringe? That they use two carrying pulleys mounted, hinged, and connected by a rod to insure their being simultaneously raised is not disputed, but it is argued that this combination is not used in a tunnel, that more than two pulleys are raised at a time and that the defendants do not use the positive rests for their pulleys described in the specification. These positions are untenable. The inventor was a resident of Chicago. The problem before him was the improvement of cable railways for street cars. It is more than probable that he did not have in mind when he made the invention such a cable road as that used by the defendants on the Brooklyn bridge, where trains are moved consisting of several heavy cars, and where it is necessary to elevate long sections of the cable. There is nothing, however, in the specification or claim which confines the invention to use in a tunnel. The specification draws a distinct line of demarkation between the combination of the claim in question and the other features of the invention.

The structure covered by the sixth claim is clearly applicable to all cable roads wherever located. To hold that one who ap-

propriates the invention can avoid the consequences of his act by using it above the plane of the rails on a surface road or on an elevated road would be unwarranted. The argument based upon the fact that the defendants raise more than two pulleys is not well founded. That they raise a section of the cable by raising two connected pulleys is self-evident. This constitutes infringement. It is none the less an infringement because more than two pulleys are raised. The defendants cannot raise four pulleys without raising two, and they cannot raise two without infringing the patent. No new result is accomplished by the additional pulleys. Their use was a perfectly obvious expedient where a long section of cable was to be raised to the gripper. That the defendants use the patented apparatus is too clear for debate and it is immaterial that they use something in addition to the patented apparatus. The positive rests EE, which the defendants do not use, are no part of the sixth claim and are not at all essential to the successful working of the combination of that claim.

The objection to the title is that it is established by certified copies of assignments. It is well settled that such instruments are, prima facie, sufficient. Brooks v. Jenkins, 3 McLean, 432; Lee v. Blandy, 1 Bond, 361; National, etc., Paper Co. v. American, etc., Box Co., (decided May 3, 1893,) 55 Fed. Rep. 488, and cases cited.

It follows that the complainant is entitled to the usual decree.